## Bewley-Darst Coal Company v. Smith, et al.

(Decided November 26, 1920.)

### Appeal from Whitley Circuit Court.

Action Upon Verbal Contract—Judgment.—In a suit on account for coal delivered to defendant where the amount due is admitted, a judgment for plaintiff for the sum sued on will be sustained, there being a failure on defendant's part to prove an alleged verbal contract for coal deliveries upon which a counterclaim was based.

TYE & SILER for appellant.

H. L. BRYANT and STEPHENS & STEELEY for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

This action was instituted by appellees, Smith and the New Watts Creek Jellico Coal Co., seeking the recovery of $1,914.44, as the net amount due on account of shipments of coal to defendant, making due allowance for a commission of 8%, to which defendant was entitled.

Admitting the correctness of the amount sued on, the answer by way of counterclaim alleged that plaintiff had accepted numerous orders for shipments of coal in carload lots to various customers of defendant, which said accepted orders had been filled only in part, and because of plaintiff's failure and refusal to complete said shipments defendant sustained damages in the sum of $4,240.35, for which sum it asked judgment, credited by the sum claimed in the petition, or a net recovery of $2,325.91.

In an amended petition it was alleged that the coal delivered on defendant's orders was sold at a stipulated price with an agreed commission of 8%, and it appearing defendant had realized a price for the coal sold greatly

in excess of that which it represented to plaintiff had been received, and for which it had not accounted to plaintiff, judgment was asked for this excess.

Defendant's proof did not conform to the allegations of its pleadings. In the testimony reliance is based solely upon an alleged verbal contract which defendant claimed had been entered into between it and plaintiff coal company in April, 1916. While it is doubtful if the alleged agreement contains the essential elements of a binding contract the evidence wholly fails to convince us that any such contract was ever made. The ex-president of plaintiff company says defendant was to take the mine and handle the coal exclusively and keep the mine running as much as it could on an 8% basis for the period of one year. According to its sales manager defendant was to handle the entire output of the mine (some four or five cars per week), that is, it was to put forth its best efforts to take care of the production of this and other mines represented by it. Deliveries were made by plaintiff on orders sent in by defendant up to and including the month of October, 1916. Plaintiff, Smith, having disposed of his interest in plantiff company declined to make further shipments on the orders from defendant, claiming they were merely offers to buy subject to cancellation at any time, and had been treated by the parties. Several orders sent in by defendant were only partially filled, and it is testified that because of the failure of plaintiff to complete said orders defendant sustained a loss of approximately $1,200.00.

Having waived the defense set up, in its answer and counterclaim and elected to prosecute the action upon the alleged verbal contract it becomes necessary for us to consider only this latter proposition.

It is conceded that subsequent to April, 1916, the date of the alleged contract, defendant did not send in orders for the entire output of plaintiff's mine. During this time not only did plaintiff sell to others but it was constantly in the market in an endeavor to dispose of its coal elsewhere, although the major portion of the product of this mine was delivered on orders from defendant.

The correspondence which passed between the parties negatives the existence of the contract relied on. A few extracts from these letters, all of which were written in 1916, will suffice. On June 9th, defendant makes inquiry as to the acceptability of some orders for steam coal, saying it has not been able to accomplish much of

late on account of the illness of one of its salesmen, Mr. Gore, the writer saying further:

"It occurred to us that possibly you have sold some coal elsewhere, and we don't want to go out and sell coal for you if it has already been placed, and we shall be glad to hear from you."

On June 10th, responding to this letter, plaintiff says it can furnish from 40 to 50 tons a day of mine run straight. This was about the capacity of the mine. At this time plaintiff had three cars on the track with no billing, and defendant was requested to handle the coal to the best advantage.

In a letter of June 12th, defendant assumed that because of its inability to do much for plaintiff the latter has been placing its coal on orders from other sources, which defendant says under the circumstances would have been entirely all right. From that time on defendant writes it should be able to devote a great deal of time to plaintiff's coal and get it going satisfactorily to them.

June 30th, defendant is notified that plaintiff has no orders to run on during July and they are urged to get some business, if no better, then at the same price.

August 5th, defendant asks plaintiff to be patient, that better prices will obtain in the future.

August 7th, defendant sending orders at better prices; urging plaintiff the importance of having a little contract business on its books.

August 16th, plaintiff writes that all orders have been filled and defendant is urged to send in more orders.

August 26th, plaintiff asks for ten orders for the following week, and on the same day defendant inquires if plaintiff would care for a little straight mine contract business, subject to commission.

September 18th, plaintiff complains of the low price orders received and defendant is urged to get better prices.

September 19th, defendant is still hopeful of disposing of plaintiff's coal at better prices.

The context of these letters is so inconsistent with the existence of the alleged contract as to make further comment unnecessary.

In September, 1916, plaintiff Smith was in defendant's office in Knoxville. He says they discussed the coal business and he told defendant he could not fill existing orders because of the advanced price of coal, the short-

age of cars, labor, etc. Smith further testifies that about a month later a representative of defendant visited him and endeavored to get him to make a year's contract for the entire output of the mine, but this he declined to do.

If, as contended by defendant, it had a year's contract for the output of plaintiff's mine, beginning in April, 1916, it would hardly be endeavoring in October of the same year to get a similar contract, nor during the year would it be writing plaintiff that it was trying to get orders for this coal, or that it would not blame plaintiff if they disposed of their coal elsewhere. The conduct of the parties and the many letters filed rebut any such theory. We are satisfied defendant wholly failed in its attempt to prove a contract. The lower court dismissed the counterclaim and granted to plaintiff the relief sought. This ruling was amply sustained by the record.

The judgment is accordingly affirmed.